UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROOF DECK ENTERTAINMENT LLC, et al.,<br><br>           Plaintiff(s),<br><br>v.<br><br>MARQUEE 15, LLC, et al.,<br><br>           Defendant(s). | 2:12-CV-1270 JCM (CWH) |

**ORDER**

Presently before the court is a motion for contempt filed by plaintiffs Roof Deck Entertainment LLC and 10th Avenue Hospitality Group LLC. (Doc. # 24). Defendants M15 Concert Bar and Grill, LLC and Benjamin Paul Valenty filed a response in opposition (doc. # 26) to which plaintiffs replied (doc. # 31).

**I.   Background**

On October 12, 2012, the court approved a consent injunction which enjoined, *inter alia*, the defendants and their partners, agents, or employees from using the name "Marquee 15" as the name of any restaurant or bar, or in connection with the rendering of any entertainment services. (Doc. # 22). The injunction also provided that defendants were required to "destroy all materials, packaging, labels, tags, pamphlets, brochures, signs, sales literature, stationery, advertisements, contracts, billboards, banners, posters, documents, and the like . . . which might, if used, violate the [o]rder herein granted." *Id*. All of the terms of this injunction took effect thirty days after its approval by the

**James C. Mahan**
**U.S. District Judge**

1 court. *Id*.

2 Plaintiffs allege that for at least ten months following the court's approval of the consent
3 injunction, defendants continued to openly use the "Marquee 15" name in online and print
4 advertisements, menus, and receipts. Plaintiffs additionally claim that defendants failed to take down
5 a prominent "Marquee 15" sign from defendants' nightclub.

6 Plaintiffs also contend that defendants have switched "Marquee 15" references on their
7 tickets as well as in their domain name and online advertising to "M15." Plaintiffs argue that "M15"
8 is colorably similar to "Marquee 15," and that these references also violate the injunction.

9 Defendants, without denying any of plaintiffs' factual allegations, argue that they have
10 "substantially complied" with the court's order by changing the official name of "Marquee 15, LLC"
11 to "M15 Concert Bar & Grill, LLC," and altering their web domain, Facebook profile, YouTube
12 channel, and Yelp profile to reflect the "M15" name. Defendants also state that they have now ceased
13 the use of any flyers containing references to "Marquee 15" and that they have "recently altered
14 menus and receipts used by the bar to reflect 'M15,' not 'Marquee 15.'" (Doc. # 26). Defendants also
15 indicate that they intend to replace the prominent "Marquee 15" sign on their nightclub when they
16 are "financially able to do so." *Id*.

17 Defendants claim that their efforts have "changed public awareness of [the defendants']
18 business" and that "the public no longer recognizes the business as "Marquee 15." Finally,
19 defendants argue that even if their conduct amounts to contempt, that plaintiffs do not demonstrate
20 any resulting damages or show a need for the court to force compliance with its order through
21 coercion.

22 **II.     Legal Standard**

23 It is well established that "courts have inherent power to enforce compliance with their lawful
24 orders through civil contempt," *Shillitani v. United States,* 384 U.S. 364, 370 (1966). A finding of
25 contempt is appropriate "[i]f a person disobeys a specific and definite court order." *In re Crystal*
26 *Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) *(*citing *Shuffler v. Heritage Bank,*
27 720 F.2d 1141, 1146 (9th Cir. 1983). However, a party can "escape contempt by demonstrating that

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

1 he is unable to comply" with a district court's order. *Crystal Palace*, 817 F.2d at 1365 *(*citing
2 *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983)).

3 **III.     Discussion**

4     In this case, it is clear that defendants defied the injunction without justification. Defendants do not deny that they continued to use the "Marquee 15" name in their advertisements, receipts, menus, and on a prominent sign affixed to their establishment beyond the thirty-day grace-period specified in the injunction. The injunction could not have been more clear that defendants were not to use the name "in connection with the rendering of any entertainment services" and that they were to destroy all "materials" using the name including "signs."

    The court acknowledges that defendants took some steps to comply with the injunction, but partial compliance with the injunction cannot justify such blatant violations. The court finds defendants' assertion that they will correct their sign "when they have the financial means to do so" quite puzzling, considering that it seems the change would only require the removal of "arquee" in order to reflect the defendants' metamorphosis into "M15."[1]

    Because this contempt relates to an underlying trademark infringement claim, the appropriate measure of damages is "the [defendants'] profits to the extent they are attributable to the infringement," *see Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985), in addition to costs and attorney fees. As such, the court will order a discovery period in which to determine the amount of damages, to be followed by a hearing.

    Accordingly,

    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs' motion for contempt (doc. # 24) be, and the same hereby is, GRANTED.

    IT IS FURTHER ORDERED that the parties in this case will have sixty (60) days from the entry of this order to conduct discovery regarding defendants' profits attributable to the violations of the injunction.

---

[1] The court does not agree with plaintiffs' contention that "M15" is colorably similar to "Marquee 15." Indeed, it is the opinion of the court that this change very well complies with the consent injunction, so long as defendants apply it to all of their advertisements, online accounts, materials, and signs.

**James C. Mahan**
**U.S. District Judge**

- 3 -

IT IS FURTHER ORDERED that the parties shall have seven (7) days following the closing of the discovery period with which to file briefs of not more than ten (10) pages concerning the total damages attributable to defendants' violation of the injunction. The parties shall then have seven (7) days after the filing of opening briefs to file response briefs of not more than five (5) pages. Thereafter, the court shall set a hearing regarding the issue of damages.

DATED January 16, 2014.

/s/ James C. Mahan
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 4 -